## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **TEO A. JAMISON,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:19-cv-00457-TES-MSH** |
| **U.S. MARSHAL'S SERVICE,** *et al.,* | |
| *Defendants.* | |

## ORDER ADOPTING THE UNITED STATES
## MAGISTRATE JUDGE'S RECOMMENDATION

Before the Court is the United States Magistrate Judge's Recommendation [Doc. 169] to grant Defendants' Motion for Summary Judgment [Doc. 154].

## FACTUAL BACKGROUND

Plaintiff Teo Jamison was arrested in Georgia for trafficking in cocaine. [Doc. 156, Jamison Depo., pp. 7:13–14, 8:20–21]. After initially being detained by state authorities, he was taken into federal custody and placed in Butts County Detention Center ("BCDC") on April 16, 2018, where he remained until November 22, 2019. [*Id.* at pp. 12:23—13:7].

The relevant medical facts preceded Plaintiff's detainment. Because of an earlier car wreck, Plaintiff alleged he was partially paralyzed on his right side when he arrived at BCDC. [*Id.* at p. 7:9–10]. Plaintiff's personal doctors also apparently diagnosed

Plaintiff with spinal stenosis and history of bilateral lateral meniscus tears in his knees. [*Id.* at 7:6–7]; [Doc. 63-3]. He underwent surgery on his left knee on March 9, 2018, about a month before he entered federal custody. [Doc. 156, Jamison Depo., pp. 11–13]. Plaintiff testified that as a result of his back and knee conditions, he is physically disabled and required use of a cane since 2016. [*Id.* p. 7:6–18].

According to Plaintiff, he had his cane on the bus transporting him to BCDC. [*Id.* at p. 13:23–24]. When he arrived, however, he was not given his cane or any of his other property. [*Id.* at pp. 13:24—14:1]. During intake, Plaintiff informed jailers that he needed his cane and to be housed in the lower level with a bottom bunk. [*Id.* at p. 14:1–5]. The jailer told Plaintiff they never received his cane and that he needed to speak with the medical unit. [*Id.* at p. 16:23–25]. Plaintiff then spoke with some unnamed person in the medical unit, who supposedly told him they needed to obtain his medical records. [*Id.* at p. 17:1–3.]

According to medical screening records, Plaintiff reported his spine and knee issues. [Doc. 99-6]. The records also reflect his report of needing a cane—which he did not have with him—and partial paralysis on his right side. [Doc. 99-7]. Plaintiff asked his wife to bring a cane to the jail and also to help BCDC obtain his medical records, both of which she did. [Doc. 156, Jamison Depo., p. 17:3–8. According to Plaintiff, when the medical unit eventually received his medical records, "Nurse Nancy" with Southern Correctional Medicine—which provided medical care for BCDC inmates—approved his

use of a cane along with a lower level and bottom bunk profile. [*Id.* at pp. 16:11–18, 17:8–11, 18:13–16]. A clinic note and provider order from October 29, 2018, includes an entry from a nurse practitioner stating, "OK to use home cane[.]" [Doc. No. 99-14]. In the "plan" section of a physical examination from April 30, 2019, an unidentified medical provider listed "needs cane." [Doc. 99-19]. On November 7, 2019, a provider ordered that Plaintiff be housed in the medical unit and noted that he was to use a cane when ambulating. [Doc. 99-26]. This was in response to Plaintiff's fall one week earlier. *Id.* Plaintiff ultimately left BCDC on November 22, 2019. [Doc. 156, Jamison Depo., p. 13:3–6].

Plaintiff testified that, despite approval for use of a cane and a medical profile for lower-level housing and a bottom bunk, Defendants refused to let him have a cane or accommodate his housing needs despite his multiple discussions and correspondence with them. [Doc. 156, Jamison Depo., pp. 18:18—22:19, 34:3–17, 35:20–25, 63:23—64:21]. He stated he never received a cane or other walking aid during his time at BCDC. [*Id.* at pp. 20:25—22:2]. He also described spending the majority of his time in the upper level of the jail—which required his use of stairs—though he was able to switch with another inmate for a lower-level cell before being told to return to his assigned cell. [*Id.* at pp. 25:6–7, 30:3–15]. He was always able to convince his cellmates to allow him the lower bunk. [*Id.* at p. 24:21–24].

Plaintiff testified that he needed a cane to walk while at BCDC. [*Id.* at pp. 13:16,

14:11–12]. Because he did not have a cane, Plaintiff stated that he "fell a lot" while attempting to ambulate or climb stairs. [*Id.* at pp. 26:22–23, 31:1–5, 32:10–11, 17–19]. Plaintiff is currently in federal prison, where he is allowed a cane at all times, though he admitted he still falls even with a cane. [*Id.* at pp. 31:12–13, 40:20–23]. He stated that he fell "a little bit more often" at BCDC, however, because he did not have a cane. [*Id.* at pp. 31:24—32:2]. Plaintiff testified that he fell once or twice a week and had five to six "full on" falls at BCDC where he suffered bruising or hit his head and went to the medical unit. [*Id.* at p. 33:4–21]. He still has a couple of scars on his elbow and knees from those falls. [*Id.* at pp. 58:19—59:1]. Plaintiff said the most significant fall was in April 2019 when he fell and broke his finger, which he still cannot move. [*Id.* at pp. 30:22–25, 59:3–4].[1]

In support of their motion for summary judgment, Defendants submitted the declaration of Defendant Antonio Lee. [Doc. 154-1]. Lee states he was the assistant jail administrator and then jail administrator at BCDC in 2018 and 2019. [Doc. 154-1]. According to Lee, jail staff "consulted with the medical staff" about whether Plaintiff's use of a cane was "medically necessary." [*Id.* at ¶ 6]. Lee avers that "[t]he medical staff consistently indicated that a cane was not medically necessary for [Plaintiff]." [*Id.*]. In support of this assertion, Defendants have submitted a medical note and provider order

---

[1] The Court previously dismissed Plaintiff's claims regarding his finger because he failed to exhaust administrative remedies. [Doc. 141]; [Doc. 149].

from September 18, 2019, stating Plaintiff's use of a cane was not "medically necessary." [Doc. 154-2]. The note states that the "[inmate] has been incarcerated for over a year—no documented provider visits for falls/trouble ambulating. [Inmate] has spinal stenosis but able to ambulate." [*Id.* at ¶ 3]. Lee states that jail staff prohibited Plaintiff's use of a cane because of the security risk it posed, noting it could be used as a weapon either by Plaintiff or by another inmate who could take it from him. [*Id.* at ¶ 7]. Lee further states, however, that "[i]f the medical staff had indicated that the cane was a medical necessity for [Plaintiff], the jail administration would have had to consider how to accommodate [Plaintiff] while maintaining security and limiting risk." [*Id.* at ¶ 8].

## PROCEDURAL BACKGROUND

The Court previously dismissed all of Plaintiff's claims except his Eighth Amendment claims of deliberate indifference to a serious medical need and safety. See [Doc. 149].[2] As outlined in the magistrate judge's Recommendation, Defendants filed their summary-judgment motion on September 28, 2022. [Doc. 154]. The Clerk then notified Plaintiff of his right to file a response within thirty days. [Doc. 157].[3] On

---

[2] Because these claims involve the same facts and injuries, the Court evaluates both under the same standard. *See Haney v. City of Cumming*, 69 F.3d 1098, 1102 (11th Cir. 1995) (holding that under a deliberate indifference claim, a defendant must "know of and disregard an excessive risk to an inmate's health and safety."); *Bayse v. Holt*, No. 1:17-CV-962-WSD-LTW, 2017 WL 9477716, at *4 (N.D. Ga. May 25, 2017), *report and recommendation adopted,* No. 1:17-CV-962-WSD-LTW, 2017 WL 3911244 (N.D. Ga. Sept. 7, 2017).

[3] The Clerk's notice also instructed Plaintiff that he "must file all materials, including any affidavits, depositions . . . and any other relevant materials which you wish to be considered[.]" [Doc. 157]. Further, the notice alerted Plaintiff that his claims "MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THE MOTION." [Doc. 157 (capitalization in original)].

November 18, 2022, Plaintiff requested an extension of time to respond to the summary-judgment motion based on Defendants' alleged discovery violations. [Doc. 163]. The Court denied Plaintiff's request on his asserted discovery grounds but did note that Plaintiff failed to update the Court on his change of address, therefore he didn't receive a copy of the summary-judgment motion in a timely manner. [Doc. 166]. Accordingly, the Court granted Plaintiff an extension to reply, making the new deadline December 19, 2022. [Doc. 166]. Plaintiff still did not reply to the summary-judgment motion, but instead filed a Motion for Reconsideration [Doc. 167] objecting to the Court's denial of his previous motions. The Court denied his reconsideration motion. [Doc. 168].

On January 3, 2023,[4] Plaintiff filed an untimely Response [Doc. 170] to Defendants' summary-judgment motion. Plaintiff then requested an extension of time to file objections to the magistrate judge's Recommendation. *See* [Doc. 171]. The Court granted that request and allowed Plaintiff to file objections before February 10, 2023. [Doc. 172]. On February 8, 2023, Plaintiff filed his objections to the magistrate judge's Recommendation. Therefore, the magistrate judge's Recommendation is now ripe for the Court's review.

---

[4] Although Plaintiff's Response was filed by the Clerk on January 23, 2023, it was signed on January 3, 2023. *See* [Doc. 170-1, p. 4]. "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Daker v. Comm'r, Ga. Dep't of Corrs.*, 820 F.3d 1278, 1286 (11th Cir. 2016) (quoting *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009)). "Absent evidence to the contrary," we "assume that [the prisoner's filing] was delivered to prison authorities the day he signed it." *Daker*, 820 F.3d at 1286 (quoting *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001)). Therefore, the Court considers Plaintiff's Response filed on January 3, 2023. Regardless, his Response was late.

Before reviewing Plaintiff's substantive arguments, though, the Court must address his pattern of late filings. Plaintiff's pro se prisoner status does not absolve him of the responsibility to comply with the Court's deadlines or procedural rules. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* [*in forma pauperis*] litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."). Indeed, although pro se litigants' filings are subject to liberal construction, that "liberal construction does not mean liberal deadlines." *Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir. 1999), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003); *Brown v. Burke*, No. 807CV1273T17EAJ, 2007 WL 4365652, at *2 (M.D. Fla. Dec. 13, 2007). The Eleventh Circuit is clear that a district court may strike a pro se litigant's late filing if "(1) he submitted them after the deadline[,] (2) he did so without leave of the court, and (3) he did not demonstrate good cause for his omission." *Butts v. CentiMark Roofing Corp.*, No. 21-12565, 2022 WL 950938, at *2 (11th Cir. Mar. 30, 2022).

Plaintiff clearly submitted his Response after the deadline and did not seek leave of the Court to make an untimely filing. Even in his Response, Plaintiff failed to outline any cause for his delay. *See generally* [Doc. 170].[5] Accordingly, the Court is under no

---

[5] Assuming that Plaintiff did not receive Defendant's Motion until November 14, 2022—or the days following based on mail delivery—he still had sufficient time to file a response. Instead, he filed a Motion for Extension of Time [Doc. 163], which the Court granted in part, and then a Motion for Reconsideration [Doc. 167], which the Court denied. Plaintiff clearly had an opportunity to respond in a timely manner.

obligation to consider Plaintiff's Response. *Butts*, 2022 WL 950938, at *2. If the Court struck Plaintiff's Response, then according to the Court's Local Rules, all of Defendants' material facts would be deemed admitted. M.D. Ga. L.R. 56; *Bryant v. Norfolk S. R.R.*, No. 22-10452, 2022 WL 17420593, at *1 (11th Cir. Dec. 6, 2022) ("[T]he district court did not abuse its discretion in finding [the defendant's] statement of material facts to be admitted."); *Lewis v. Geren*, No. 4:07-CV-114 (CDL), 2009 WL 2912953, at *2 n.1 (M.D. Ga. Sept. 2, 2009).

However, even without Plaintiff's Response, the Court still must consider the merits of the summary-judgment motion. *See Tr. of Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps. v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004) ("The district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion."). Accordingly, the Court must consider the merits of the case. Because neither Plaintiff's Response nor his Objections change the outcome—and out of an abundance of caution—the Court reviews Plaintiff's arguments.[6]

## LEGAL STANDARD

28 U.S.C. § 636 provides that after the magistrate judge files his proposed

---

[6] Instead of recommitting the case to the magistrate judge, the Court exercises its discretion to address Plaintiff's arguments in his late-filed Response in the first instance. *Williams*, 557 F.3d at 1292. Additionally, Plaintiff's Response is substantially similar to his Objections. *Compare* [Doc. 170], *with* [Doc. 173].

findings and recommendations, "any party may serve and file written objections to

such proposed findings and recommendations as provided by rules of court[]" and that

"[a] judge of the court shall make a de novo determination of those portions of the

report or specified proposed findings or recommendations to which objection is made."

28 U.S.C. § 636(b)(1)(C). Thus, "[a]fter a magistrate judge has issued a report and

recommendation under [28 U.S.C.] § 636(b)(1)(B), a party that wishes to preserve its

objection must clearly advise the district court and pinpoint the specific findings that

the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009).

## DISCUSSION

To establish a claim for deliberate indifference to a serious medical need, a

plaintiff must "satisfy both an objective and a subjective inquiry." *Brown v. Johnson*, 387

F.3d 1344, 1351 (11th Cir. 2004) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir.

2003)). First, the plaintiff must prove an objectively serious medical need. *Id.* Second, the

plaintiff must prove that the prison official acted with deliberate indifference to that

need. *Id.* The Court reviews each element in turn.

### I.   Serious Medical Need

"A serious medical need is considered 'one that has been diagnosed by a

physician as *mandating* treatment or one that is so obvious that even a lay person would

easily recognize the necessity for a doctor's attention.'" *Farrow*, 320 F.3d at 1243

(quoting *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)

(emphasis added)). Put another way, courts describe a serious medical need as "one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). To be sure, "routine discomfort does not qualify as a serious medical need." *Baxter v. Adam*, 750 F. Supp. 2d 1313, 1335 (N.D. Fla. 2010). Certainly, "[n]ot every ache and pain or medically recognized condition involving some discomfort can support [a constitutional] claim." *Brown v. Hollas*, No. 7:12-CV-062-HL-TQL, 2012 WL 1867079, at *2 (M.D. Ga. May 22, 2012).

Here, Plaintiff alleges that his need for a cane to ambulate is a serious medical need.[7] *See* [Doc. 170]. But the record demonstrates that his need for a cane was neither

---

[7] Plaintiff's allegations **are not** that he needs a cane to alleviate knee pain. Rather, he alleges that he needs a cane to help him ambulate because of an "unsteady gait." [Doc. 99, p. 7 ("Plaintiff presented a serious medical need when he alerted Defendants he was a fall risk . . . the failure to [provide a cane] could result in [further injury].")]; [Doc. 156, Jamison Depo., p. 7:11–18 ("You know, I have an unsteady gait. That's why I use the cane.")]. The alleged risk Plaintiff asserts—that is, the risk of falling in the future—is not enough to constitute a serious medical need. *See United States v. Hundley*, No. 19-CR-20182-RAR, 2020 WL 6826362, at *3 (S.D. Fla. Nov. 20, 2020) ("Defendant[] merely posits that he may one day face a risk of harm, which is wholly insufficient to establish an 'objectively serious medical need' under the Eighth Amendment.").

The Court acknowledges that Plaintiff's knee surgery and immediate recovery were events that required medical treatment. Plaintiff received that treatment, both before and after his arrival at BCDC. Unfortunately for Plaintiff, the medical treatment inside a detention facility is different from any treatment he received before his arrival at BCDC. Although his normal doctor might have prescribed the use of a cane as a part of his recovery regimen, that does not create a standard to which prison doctors must adhere. Rather, a difference of opinion between two doctors does not rise to deliberate indifference. *Myers v. Corizon Med. Servs.*, No. 6:14-CV-1533-VEH-TMP, 2015 WL 5033209, at *3 (N.D. Ala. Aug. 25, 2015) ("The difference of opinion between an inmate and a medical doctor, or between two medical doctors, as to treatment and diagnosis of a medical condition is insufficient to state a claim of constitutional proportion."). The Constitution only requires "minimally adequate medical care," not necessarily the treatment of a prisoner's choice. *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991); *Neal v. Parker*, No. 5:15-CV-71-MW-GRJ, 2017 WL 443163, at *3 (N.D. Fla. Jan. 11, 2017), *report and recommendation adopted*, No. 5:15CV71-MW/GRJ, 2017 WL 440727 (N.D. Fla. Feb. 1, 2017).

mandated by a physician, nor "so obvious that even a lay person" would recognize the need. *Farrow*, 320 F.3d at 1243. Plaintiff testified that he fell a few times, and those falls resulted in scrapes, skinned knees, and bumps to his head. [Doc. 156, Jamison Depo., p. 33:8–16]. Plaintiff alleges that one fall resulted in a broken finger. [*Id.* at p. 30:22–25]. Accepting those injuries as true, they do not rise to the level of a serious medical need.[8] To be sure, cuts, scrapes, and bruises are not serious medical needs. *Camps v. Warner Robins*, 822 F. Supp. 724, 733 n.3 (M.D. Ga. 1993); *Hayward v. Doe 1*, No. CV419-75, 2019 WL 4132571, at *4 (S.D. Ga. Aug. 29, 2019), *report and recommendation adopted*, No. CV419-075, 2019 WL 4935403 (S.D. Ga. Oct. 4, 2019); *Young v. United States*, No. 5:13-CV-609-OC-29PRL, 2015 WL 7759439, at *8 (M.D. Fla. Dec. 2, 2015) (collecting cases). Even a broken finger is not *per se* a serious medical need. *Kelly v. Jones*, No. 5:15-CV-0337-CAR-MSH, 2017 WL 2676422, at *4 (M.D. Ga. June 21, 2017); *Brown v. Talmage*, No. 6:20-CV-48, 2022 WL 3443944, at *5 (S.D. Ga. July 25, 2022), *report and recommendation adopted*, No.

---

Even if Plaintiff's claim was based on knee pain caused by not having a cane, he does not provide evidence that his pain reaches the requisite level to constitute a serious medical need. Indeed, Plaintiff's Recast Complaint does not mention knee pain. *See generally* [Doc. 99]. Even in Plaintiff's deposition, he only mentions pain related to his broken finger. [Doc. 156, Jamison Depo., p. 48:2–10]. However, medical staff still treated him consistently for various complaints of back and finger pain. *See, e.g.*, [Doc. 99-23, p. 2 (prescribing pain medication for finger)]; [Doc. 99-26]; [Doc. 99-27].

[8] First, as discussed *supra* note 1, Plaintiff failed to exhaust administrative remedies for his broken finger claim. But even assuming those injuries did rise to the standard of a serious medical need for purposes of this claim, Plaintiff received treatment for them. Records show that medical staff treated Plaintiff's finger, including ordering x-rays, prescribing pain medication, and ultimately performing a procedure to attempt to relieve pain. [Doc. 99-18]; [Doc. 99-19]; [Doc. 99-20 (reviewing x-ray report of finger)]; [Doc. 99-22]; [Doc. 99-23, p. 1 (discussing procedure on finger)]; [Doc. 99-23, p. 2 (prescribing pain medication for finger)].

6:20-CV-48, 2022 WL 3372757 (S.D. Ga. Aug. 16, 2022).

None of the medical professionals who examined Plaintiff clearly stated that he required a cane, much less prescribed one. Instead, Plaintiff's records show that medical professionals wrote varying responses to his requests for a cane—but none of those notes are mandates to jail staff that Plaintiff's need for a cane was medically necessary. *See, e.g.*, [Doc. 154-2, p. 2 ("[N]o cane needed at this time.")]; [Doc. 154-2, p. 3 ("[C]ane not medically necessary at this time.")]; [Doc. 99-14, p. 3 ("OK to use home cane.")];[9] [Doc. 99-14, p. 1 (same)]; [Doc. 99-26, p. 1 ("[Inmate] to use cane to ambulate.")].[10]

While medical professionals implied that it was "OK" for Plaintiff to use a cane to ambulate, that is not the same as a condition being "diagnosed by a physician as **mandating** treatment." *Farrow*, 320 F.3d at 1243 (emphasis added). Indeed, in other areas of case law, numerous courts have concluded that "the mere notation by a physician that a claimant should use a cane is not evidence of medical necessity." *Billie R. v. Kijakazi*, No. 4:21-CV-00124-HBB, 2022 WL 17178744, at *4 (W.D. Ky. Nov. 23, 2022) (analyzing Social Security claims); *Halama v. Comm'r of Soc. Sec.*, No. 1:12 CV 1859, 2013

---

[9] Plaintiff asserts that this note was the medical staff's "way of telling [officers], 'yes it's ok for Jamison to have his cane from home.'" [Doc. 173, p. 2]. That argument faces two problems. First, it is pure speculation of the intent of medical providers with no evidence to support it. *See Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004) (holding that speculation cannot create a genuine issue of material fact). Second, even accepting that as true, it is a permissive instruction rather than one mandating Plaintiff's need for a cane. That simply doesn't meet the requisite standard. *Farrow*, 320 F.3d at 1243.

[10] This note came after medical staff moved Plaintiff to the medical unit to better address his needs. [Doc. 99-26]. When he moved to the medical unit, though, staff determined that he didn't need a cane to ambulate since the area was so small. [Doc. 156, Jamison Depo., p. 28:1–10].

WL 4784966, at *8 (N.D. Ohio Sept. 5, 2013) (same); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002); *Schade v. Colvin*, No. CIV.A. 13-1071, 2014 WL 320133, at *9 (W.D. Pa. Jan. 29, 2014) ("Even where the medical evidence mentioned the claimant's use of a cane and a physician had indicated that the claimant needed to use a cane, such isolated notations are insufficient to support a finding that the [claimant's] cane was medically necessary."). Clearly, the burden of proof is higher under the Eighth Amendment as compared to those contexts. *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (describing the deliberate indifference standard as "a difficult burden for a plaintiff to meet."); *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990) (same); *Connell v. Tucker*, No. 8:19-CV-668-T-02CPT, 2020 WL 2219206, at *2 (M.D. Fla. May 7, 2020) ("Mere misdiagnosis or subpar care, even if it rises to the level of medical malpractice, does not constitute deliberate indifference."). Therefore, if these sorts of medical notes would not suffice at the lower standard in other areas, they necessarily cannot meet the higher standard here to give rise to a constitutional violation.

But, even when a medical professional does not diagnose a condition, liability can still arise if the condition is so noticeable and obvious that a lay person would recognize the need. *Farrow*, 320 F.3d at 1243. But here, medical staff consistently noted that Plaintiff maintained a "steady" or "normal gait" when walking without any assistance. *See* [Doc. 99-26, p. 1]; [Doc. 99-22, p. 1]; [Doc. 99-19, p. 1]; [Doc. 99-14, p. 1]; [Doc. 99-14, p. 2]; [Doc. 99-15]; [Doc. 99-24, p. 1]. Therefore, it would not be readily

13

apparent that Plaintiff needed a cane to walk properly.

More importantly, though, is Plaintiff's own admission that he still falls even when using a cane. [Doc. 156, Jamison Depo., p. 31:12–13 ("I still fall, even with the cane.")]. Even if Defendants allowed Plaintiff to use a cane, the alleged fall risks remain.

Plaintiff's claim of a serious medical need for a cane essentially comes down to a disagreement between him and the jail's medical providers. However, that does not give rise to a constitutional violation. *Ryan v. Aina*, 222 F. App'x 801, 805–06 (11th Cir. 2006). Accordingly, the Court concludes that Plaintiff failed to establish a serious medical need for a cane. That ends Plaintiff's claim for deliberate indifference to a serious medical need.

## II.   <u>Deliberate Indifference</u>

Even if the Court got it wrong and Plaintiff's need for a cane is a serious medical condition, he still failed to establish that any Defendant was deliberately indifferent to that need. To establish the deliberate indifference prong, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Here, Plaintiff failed to establish that any remaining Defendant subjectively

knew of any serious risk of harm to Plaintiff.[11] No doctor or medical professional informed jail staff of any medical need for a cane. Instead, the opposite is true—medical staff consistently told jail staff that a cane was **<u>not</u>** medically necessary. [Doc. 154-1, Lee Decl., ¶ 6 ("The medical staff consistently indicated that a cane was not medically necessary for [Plaintiff].")]; [Doc. 154-2, p. 2 ("[N]o cane needed at this time.")]; [Doc. 154-2, p. 3 ("[C]ane not medically necessary at this time.")]. Additionally, Plaintiff filed numerous grievances with jail administrators who then contacted medical staff. According to the grievance responses, medical staff continuously informed jail officials that a cane was not medically necessary. *See* [Doc. 99-28, p. 4–5].[12]

It is constitutionally permissible for jail officials to rely on medical professionals to make decisions on necessary treatment. *See Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1050 (11th Cir. 2014) (holding that the law does not require a sheriff to "ignore the [medical] determination and recommendation" of his staff, and a sheriff cannot be held liable for failing to act contrary to the opinions of medical personnel)*; Williams v. Limestone Cnty.*, 198 F. App'x 893, 897 (11th Cir. 2006); *Scott v. Campbell*, No. 4:08CV205-RH/WCS, 2009 WL 3028306, at *3 (N.D. Fla. Sept. 17, 2009); *Williams v. Adkinson*, No.

---

[11] Importantly, the only remaining Defendants are Sheriff Gary Long, Chief White, Captain Lee, Captain Weaver, Grievance Officer Blackmon, and Major Gandee. All medical providers have been terminated from the case.

[12] Plaintiff's Objection asserts that Defendants' grievances are not reliable because they "can be manipulated by defendants to reflect defendants['] wishes." [Doc. 173, p. 5]. However, he offers no proof to contradict the information within the grievance forms.

3:17CV184/LAC/EMT, 2020 WL 982007, at *4 (N.D. Fla. Feb. 7, 2020), *report and*

*recommendation adopted,* No. 3:17CV184/LAC/EMT, 2020 WL 980144 (N.D. Fla. Feb. 28,

2020).

 To be sure, even if medical staff did intend to instruct officers that Plaintiff

needed a cane, Plaintiff failed to assert the requisite culpable state of mind for the

remaining Defendants. *Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. 2014)

(concluding that officers assigning an inmate to a top bunk in violation of his medical

profile was no more than "gross negligence" without proof of the defendant's state of

mind); *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (holding

that to satisfy the subjective component, the defendant must possess a "sufficiently

culpable state of mind," rising above negligence or even gross negligence and being

"tantamount to intent to punish.").

 Put another away, Plaintiff failed to prove that Defendants knew that Plaintiff

needed a cane and **intentionally** prevented his access to it in order to inflict more pain

or punishment. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (requiring "unnecessary and

wanton infliction of pain" to establish an Eighth Amendment violation); *Raines v.

Florida*, 983 F. Supp. 1362, 1368 (N.D. Fla. 1997). Instead of proving the requisite mental

state for any Defendant, Plaintiff just asserts—in a conclusory fashion—that

"[Defendant] Lee keep [*sic*] stopping them from providing treatment." [Doc. 173, p. 2].

However, that is not enough to carry his burden of proving deliberate indifference.

Accepting Plaintiff's statement as true—that Defendant Lee did prevent Plaintiff's access to a cane—Plaintiff still failed to link that action to any alleged deliberate indifference to his serious medical need. Instead, the evidence shows that Defendant Lee denied Plaintiff access to a cane based on security concerns—not as a method of punishment or callous disregard for Plaintiff's health. *See Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

Moreover, even if the Court is wrong, and medical professionals did intend for Plaintiff to receive a "profile"—or notice to jail officers—for a cane, Plaintiff failed to offer any proof that medical professionals issued such a profile. However, medical staff did give Plaintiff a profile for a double mattress and soft-soled shoes. [Doc. 99-13]. Such a mistake of failing to enter a medical profile would not—without more—rise to deliberate indifference. *See Burley v. Upton*, 257 F. App'x 207, 210 (11th Cir. 2007) (holding that "bureaucratic misunderstandings" do not rise to deliberate indifference).

Even more, jail officials are granted wide deference in determining regulations to maintain safety and security within prisons and jails. *Whitley v. Albers*, 475 U.S. 312, 322 (1986); *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979) (holding that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 764 (7th Cir. 2021) ("The balance between security and medical concerns adds an

additional layer for us to consider."); *Torcasio v. Murray*, 57 F.3d 1340, 1348 (4th Cir. 1995).

That deference includes balancing the necessity for a cane or other medical device against the potential security risks that accompany its use in a prison or jail. *Harry v. Wagner*, No. 2:12-CV-643-FTM-29, 2014 WL 2091202, at *7 (M.D. Fla. May 19, 2014) ("The defendants' security concerns are no less valid merely because they may have interfered with Plaintiff's medical treatment[.]"); *Rix v. McClure*, No. 10-CV-1224-CM, 2012 WL 1183435, at *2 (D. Kan. Apr. 9, 2012). Therefore, Defendants' concern for security weighs against allowing Plaintiff to use a cane—especially since no medical professional opined that the cane was medically necessary such that it should overcome these valid security concerns.

Accordingly, Plaintiff failed to show that any Defendant acted with the requisite intent to establish deliberate indifference.

### III.   **Qualified Immunity**

Lastly, even if Plaintiff established the elements needed to prove deliberate indifference to a serious medical need, Defendants are protected by qualified immunity. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v.*

18

*Fitzgerald*, 457 U.S. 800, 818 (1982)).

To claim qualified immunity, a defendant must first show he was performing a discretionary function. *Moreno v. Turner*, 572 F. App'x 852, 855 (11th Cir. 2014). Discretionary functions include those "(1) undertaken pursuant to the performance of [an officer's] duties and (2) within the scope of [the officer's] authority." *Lenz v. Wilburn*, 51 F.3d 1540, 1545 (11th Cir. 1995). Here, it is undisputed that Defendants acted within their discretionary authority. *Phipps v. Wade*, No. 7:20-CV-00036-LSC, 2022 WL 275522, at *4 (N.D. Ala. Jan. 28, 2022) (holding that officers making jail-operating decisions are acting within their discretionary power).

"Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). A plaintiff demonstrates that qualified immunity does not apply by showing "(1) the defendant violated a constitutional right, and (2) [the] right was clearly established at the time of the alleged violation." *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). The "clearly established" requirement may be met by one of three showings: (1) a materially similar case has already been decided; (2) an accepted general principle should control the novel facts of the case with obvious clarity; or (3) the conduct in question so obviously violated the Constitution that no prior case law is necessary. *Loftus v. Clark-Moore*, 690

19

F.3d 1200, 1204–05 (11th Cir. 2012).

Plaintiff's Response and Objection fails to address Defendants' assertion of qualified immunity, much less point to any clearly-established law that would preclude its application to this case. Instead, Plaintiff briefly asserts that "[o]fficers wave right [*sic*] to qualified immunity when they are deliberately indifferent against a prisoner[']s constitutional rights." [Doc. 170, p. 5]. However, that just simply misses the mark. Even accepting, *arguendo*, that Defendants violated a constitutional right, Plaintiff needed to show some binding case,[13] legal principle, or policy that would outline clearly-established liability for denying use of a cane **under these—or sufficiently similar— circumstances**.[14] *White v. Pauly*, 580 U.S. 73, 79 (2017) ("Clearly established law must be 'particularized' to the facts of the case."). Even if Plaintiff relies on the "obvious clarity" exception to clearly-established law, this case is not one "where the officers' conduct so obviously violates the constitution that prior case law is unnecessary." *Gilmore v. Hodges*, 738 F.3d 266, 279 (11th Cir. 2013). That "narrow exception" only applies in the most "rare" cases where the conduct is "so bad that case law is not needed to establish that the conduct cannot be lawful." *Id.*

Simply put, Plaintiff offered nothing to carry his burden to overcome qualified

---

[13] Importantly, case law must be binding precedent to create clearly-established law. *Gilmore v. Hodges*, 738 F.3d 266, 279 (11th Cir. 2013).

[14] To be clear, the necessary clearly-established law needed to establish that jail officers must allow inmates to use a cane (which could be used as a weapon) based on the permissive—and inconsistent— notes of medical staff.

immunity, and the Court finds nothing to support the proposition, either. As a result, the Court finds no caselaw or binding policy that clearly established the unconstitutionality of Defendants' actions here. Thus, Defendants are entitled to qualified immunity.

<u>CONCLUSION</u>

Therefore, the Court **ADOPTS** the United States Magistrate Judge's Recommendation [Doc. 169] **AS MODIFIED HEREIN** and **MAKES IT THE ORDER OF THE COURT**. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment [Doc. 154]. The Clerk is **DIRECTED** to **ENTER JUDGMENT** and **CLOSE** this case.

**SO ORDERED**, this 16th day of February, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**